### ANDERSON et al. v. MT. CLEMENS POTTERY CO.
No. 2582.

District Court, E. D. Michigan, S. D.

Feb. 8, 1947.

Writ of Certiorari Dismissed April 14, 1947.

See 67 S.Ct. 1191.

See also 66 S.Ct. 1187.

Lee Pressman, of Washington, D. C., and Edward Lamb and Lowell Goerlich, both of Toledo, Ohio, for plaintiffs.

Frank E. Cooper, of Detroit, Mich., Bert V. Nunneley, of Mt. Clemens, Mich., and Beaumont, Smith & Harris, of Deroit, Mich., for defendant.

Frank Donner, of Washington, D. C., for CIO.

John F. Sonnett, Asst. Atty. Gen., for the United States.

Harvey M. Crow, of Washington, D. C., for National Manufacturers Ass'n.

PICARD, District Judge.

Because of the interest and discussion that this case has stimulated, we deem it advisable to give a brief history of its developments which finally resulted in necessity for this court's present determination.

When this matter was first heard (D.C., 60 F.Supp. 146), plaintiffs were not seeking pay for time consumed walking to their jobs nor for preliminary activities necessary for production work. The only question discussed by either counsel was whether defendant company had instructed plaintiff employees to punch in 14 minutes before the scheduled starting times in the morning and afternoon and punch out 14 minutes after the scheduled quitting times at noon and afternoon. Plaintiffs insisted that they were expected to and did work during these additional periods but that this time was not computed in determining whether they were exceeding the legal workweek. If true, plaintiffs were thus being deprived of the extra half-time for pottery produced in hours over the legal week.[1]

The master's report concluded that the employees had not substantiated their claims and we agreed with that report in all but one particular. We held that plaintiffs had met the test required; that they had proved that they were directed and encouraged to reach their work bench early in the morning and back after lunch, and actually produced pottery during these minutes for which time was not computed. We selected a figure of 7 minutes before the scheduled starting time in the morning and 5 minutes before the scheduled starting time following lunch for which the employers were not

---

[1] Legal workweek was 44 hrs. Oct. 24, 1938 to Oct. 24, 1939
42 " " 24, 1939 to Oct. 24, 1940
40 " " 24, 1940 on

obligated to pay, including therein, time it took plaintiffs to walk to their respective places in defendant's plant. For the difference between those 7 and 5 minutes and the time punched we held the employer liable if such additional minutes brought the employee over the allowed workweek. We so found because we believed the men actually worked at production labor.

The Court of Appeals (6 Cir., 149 F.2d 461), following Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, held that we were bound by the master's conclusions unless "clearly erroneous" and it was sustained by the Supreme Court, 66 S.Ct. 1187, on this issue. Ordinarily this would have ended the case then and there.

In the master's report and record of the testimony, however, there was much discussion about minutes consumed walking from time clock to work bench and for "preliminary activities" but counsel for both plaintiffs and defendant used this evidence solely to support their respective positions on the only question before this court—productive overtime.

Here it is well to note that in 1943 defendant contended that it was necessary to start plaintiffs clocking in 10 to 14 minutes before starting time because of the distance the employees had to travel within defendant's plant to their work benches and because they had to perform a lot of other "preparatory" duties after "checking in." One defendant witness said it would take six minutes to walk 400 feet—a rate of less than one mile per hour.

On the other hand, and in contrast, plaintiffs, in 1943, minimized time consumed in preliminary duties such as greasing arms, putting on aprons, gloves and small cots to protect their fingers, insisting that they could and should do all these things including "walking" to the farthest point in the plant in not to exceed 2 minutes. Arriving at their work places, they contended, they usually started work immediately.

In the Court of Appeals the issue was also confined to "overtime," or time allegedly actually worked by plaintiffs in production labor before the scheduled starting hours in the morning and after lunch.

From this status the case moved to our highest tribunal and we cite plaintiffs' petition for certiorari as their understanding of what had been proven before the master, and why they were asking the Supreme Court to reverse the Court of Appeals and affirm this court:

"The evidence also revealed *that it took between one minute and two minutes* from the time when the employees checked through the time clock cards to the time when they *undertook productive labors.*" *(Emphasis ours)*

But that petition also reveals plaintiffs contending: "that they should be paid by the time clock cards as maintained by the employer. The travel time between the time clocks and their work benches as well as all other activities after punching the time clocks bears all the indicia of work," citing Tennessee Coal, Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014, and Jewell Ridge Coal Corporation v. Local, 325 U.S. 161, 164-166, 65 S.Ct. 1063, 89 L. Ed. 1534.

Here enters so-called "portal-to-portal" for the first time.

Here we find that in approaching the Supreme Court, plaintiffs start out strenuously urging that this Court's judgment eliminating "checking in and travel time" be *sustained, and in the same petition* ask "*portal-to-portal pay.*"

This was followed by plaintiffs' brief to the Supreme Court which also urged the portal-to-portal theory in one part and ended by asking that Court to approve our decision wherein we eliminated "walking time."

On the other hand, defendant, while contending that "portal-to-portal" was not properly before the Supreme Court, consumed several pages in its brief denying applicability of the Tennessee and Jewell Ridge cases and citing many inferior courts on similar fact situations. But here again we find defendant emphasizing that "it took a minimum of twelve to fifteen minutes to get the workers into the plant."

It must therefore be apparent that if the portal-to-portal question is now in this case

it was not injected nor inserted therein by the Supreme Court.

It's here because defendant company oversold its defense before the master four years ago in explaining why its employees reported 14 minutes before starting hours. This was quickly taken advantage of by plaintiffs in the interim between the Court of Appeals and the Supreme Court. In fact when the Supreme Court held that this Court was wrong in granting overtime for what we believed was real production labor, it found itself in the position where it must in all fairness at least inquire into the extent of walking time and preliminary activities to which defendant company was apparently admittedly subjecting its employees, and which seemingly reached the proportion of 25 to 30 minutes each day.

It was this chameleonic pattern of the factual fabric which the Supreme Court decided needed clarifying and since the master had placed upon plaintiffs the burden of showing time necessarily spent on the employer's premises in preliminary activities, it held that this was not a fair interpretation of the law, "assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute." [66 S.Ct. 1187, 1193] And "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts."

The Supreme Court further held that

"Time spent in walking to work on the employer's premises, after the time clocks were punched, involved 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.' * * * Work of that character must be included in the statutory workweek and compensated accordingly, regardless of contrary custom or contract."

We were therefore instructed to determine:

First, how much walking time was involved in going from the time clock to the several respective work places, and

Second, time necessarily consumed "putting on aprons and overalls, removing shirts, taping or greasing arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools."

But the Supreme Court has given us two other mandates. The Supreme Court directed that

(a) When we had obtained this information we must, in computing damages, apply the rule of "De Minimis Non Curat Lex" (the law cares not for small things), 26 C.J.S. 705; and

(b) Apply the rule to a workweek contemplated by Sec. 7(a) Fair Labor Standards Act, 29 U.S.C.A. § 207(a), "in light of the realities of the industrial world."

There is nothing in the Supreme Court's decision to justify our including other minutes spent on the company's property, nor are we concerned with the question of whether the time spent in "preliminary activities" or "walking" are compensable. The holding of the Supreme Court in this case is that they are compensable subject to the "de minimis" rule and "in light of the realities of the industrial world." Whether certain acts are or are not "preliminary activities" however is still for us to determine.

And since we are bound by the master's finding that plaintiffs were not required to work at production labor before or after any of the scheduled starting and quitting times, the question of overtime of the genus originally before this court is not to be considered by us.

### The Facts.

Since our order to the master did not contain instructions to compute the time consumed walking and in preliminary activities, and because, when we were ready to proceed the master was no longer available, it was necessary for this Court to hear the further testimony in order to comply with the Supreme Court's direction.

In arriving at those facts the following was agreed upon:

"(1) That at the rate of 2 miles per hour a man walks 2.93 feet per second or 176 feet every minute.

"(2) That at the rate of 2½ miles per hour a man walks 3.67 feet per second or 220 feet every minute.

"(3) That at the rate of 3 miles per hour a man walks 4.4 feet per second or 264 feet every minute.

"(4) That at the rate of 4 miles per hour a man walks 5.86 feet per second or 352 feet per minute.

"(5) That the following table indicates the distances in feet from time clocks to the several departments in this particular plant:

| Department | Shortest Distance | Mean Distance | Farthest Distance |
|---|---|---|---|
| Clay Shop | 400 | 600 | 800 |
| Bisque Sagger Filling | 485 | 528 | 570 |
| Bisque Car Loading | 430 | 480 | 530 |
| Casting | 685 | 753 | 820 |
| Mould | 820 | 855 | 890 |
| Slip House | 590 | 650 | 710 |
| Sagger | 450 | 480 | 510 |
| Decorating | 170 | 260 | 350 |
| Packing | 465 | 612 | 760 |
| Chippers and Selectors | 285 | 368 | 450 |
| Glost Sagger Fillers | 310 | 365 | 420 |
| Glost Car Loaders | 225 | 275 | 325 |
| Glost Sagger Unloading | 160 | 255 | 350 |
| Glost Kilns | 130 | 227 | 325 |
| Bisque Kilns | 430 | 625 | 820 |
| Dipping and Brushing | 385 | 447 | 510 |
| Glaze Room | 450 | 530 | 610 |
| Maintenance | 550 | 570 | 590 |
| Boiler and Engine Room | 680 | | " |

The impracticability of determining the distance to each work bench being apparent to all parties, this court informed counsel that from the above stipulation 5 he would select the "mean distance" as the point in each department to which walking time would be computed. The mean distance was explained on the record to be not "as the crow flies," but as the halfway point along the routes taken by the employees in going to their work benches.

As we anticipated, the testimony on how long it would take a person "walking at an ordinary rate along the most direct route from time clock to work bench," was at great variance, and at times plaintiff witnesses were unbelievable. One plaintiff witness said she would walk 46 feet per minute, which is .522 miles per hour. Defendant's witnesses said they walked through the plant at between 282 and 330 feet per minute.

Plaintiffs' witnesses, in an obvious effort to build up "walking time," discovered much impedimenta and many difficulties in the paths that they had to take although there was no hint of such impedimenta or difficulties when plaintiffs were testifying in the original suit. Their entire testimony was very unsatisfactory and made little impression upon this court. If the plaintiffs' witnesses were telling the truth, they went to work each day under the most adverse conditions possible. In truth no obstacle race could have had more hazards, one witness saying that boxes were strewn all along the entire five hundred feet she had to walk. On the other hand, defendant in the main also reversed its field, and took a much smaller figure in computing walking time than it did in 1943.

After hearing the testimony, and both parties having consented that this court

might utilize its knowledge of the plant itself, we arrived at the conclusion that with due consideration to intermittent presence of any trucks, or train of trucks, or the coming and going of other employees, a rate of 250 feet per minute from the south clock, and 275 feet per minute from the north clock, under travel conditions usually existing in that plant, would be fair. On that basis the time taken to travel from time clocks to the several departments is as follows:

### From North Clock

| Department | (At 275 ft. per minute) | Number of Minutes |
|---|---|---|
| Clay | 600 | 2.18 |
| Bisque Sagger Filling | 528 | 1.92 |
| Bisque Car Loading | 480 | 1.74 |
| Casting | 753 | 2.74 |
| Mould | 855 | 3.10 |
| Slip House | 650 | 2.36 |
| Sagger | 480 | 1.74 |

Note: Only the mould department shows a walking distance of 3 minutes, and there is no evidence that any plaintiff comes from that department.

### From South Clock

| Department | (At 250 ft. per minute) | Number of Minutes |
|---|---|---|
| Decorating | 260 | 1.04 |
| Packing | 612 | 2.45 |
| Chippers and Selectors | 368 | 1.47 |
| Glost Sagger Fillers | 365 | 1.47 |
| Glost Car Loaders | 275 | 1.1 |
| Glost Sagger Unloading | 255 | 1.02 |
| Glost Kilns | 227 | .90 |
| Bisque Kilns | 625 | 2.5 |
| Dipping and Brushing | 447 | 1.78 |
| Glaze Room | 530 | 2.12 |
| Maintenance | 570 | 2.28 |
| Boiler and Engine Room | 680 | 2.7 |

Note: No department is 3 minutes from the time clock.

### Preliminary Activities.

Here again we found the evidence most conflicting, and it is our conclusion that when plaintiffs, testifying in the hearings before the master four years ago, stated that the time necessary for preliminary activities was practically nil, they were much nearer the truth than they were at our recent hearing.

From the evidence we find that:

(a) Putting on aprons and overalls, which was the custom of about five-twentieths of the employees, consumed less than half a minute a day. This was voluntary, and for the benefit and comfort of the employee himself;

(b) Removing shirts varied with the weather, was also voluntary, and would consume only a few seconds.

(c) There was no taping of arms, except by one woman who had met with some kind of an accident. Some put a piece of tape between the thumb and the forefinger, probably five seconds, and this was also voluntary;

(d) Only a few who were in the small dipper department greased their arms; that this was voluntary and consumed about 30 seconds a day;

(e) Putting on finger cots and taking them off, each twice, would take about one minute;

(f) Putting on gloves and taking them off would take less than a minute, but this was confined to a comparative few in one or two departments, and those who put on finger cots did not put on gloves;

(g) The only preparing of equipment for productive work was taking off the water that had accumulated on and stirring the glaze. It took not to exceed 2 minutes at the start of the work day and the evidence we believe indicates that this was done after starting hour. In addition it was part of the job and was considered in the rate of pay at which this particular function was compensated;

(h) Turning on light and machinery switches was practically nil in time consumed, one or two seconds; and that opening windows was not done by anybody but the foremen;

(i) There is no evidence that these employees had to assemble and sharpen their tools;

(j) The scraping of the block consumed a minute or so and that this was repeated

throughout the day the man was working. But this was part of that particular employee's job since it was repeated time and again during his work hours as clay might gather on the block. It was all considered in his rate of pay;

(k) Taking off clay from the jigger machine was another part of the job that took less than a minute, and was repeated throughout the day;

(l) In the slip house department where the men had to change clothes that 5 minutes a day should be allowed since the evidence proved that this had to be done before starting on the employee's own time, but not after work—then he changed on the company time. This particular group did not go out to lunch, were paid for the full. half hour, and walking time plus preliminary activities here amounted to 9.72 minutes per day;

(m) There was no cleaning up performed by plaintiffs after working hours. In fact the cards indicate that the employees in many instances were at the time clock within 3 or 4 minutes of the closing hour. Some punched out exactly at the closing hour after walking to the time clock before quitting time and waiting until the even hour. The only cleaning up that plaintiffs did was policing around their particular job on company time. This was also in conformity with the findings of the master.

While we do not consider a, b, c, d, g, h, j or k above as preliminary activities, nevertheless if the Supreme Court's opinion means what plaintiffs contend, to-wit, that they are, the sum total for any one person would be less than 3 minutes a day.

From the testimony this court has arrived at the conclusion that in only three departments, the glost belt, where gloves and hand rags were put on, the slip house where clothes were changed, and in the dipping and brushing department where finger cots were used, were there any preliminary activities that we would consider in any way not part of the job, and necessarily performed before the employee started to work; and that in the glost and dipping departments those preliminary activities would not take 2 minutes a day.

### Adding "Walking Time" and "Preliminary Activities."

While perhaps the following should properly be under "conclusions of law." for convenience we place this finding and statement here.

There was much urging that the court should pass separately upon the "de minimis" features of preliminary activities, and walking time. And there is some reasoning to support this since the Supreme Court referring to preliminary activities and the de minimis doctrine used the significant words "here again," indicating the the two, "walking time" and "preliminary activities," were to be considered separately.

Still we reject this theory.

■ We believe that if X time is used in walking and Y time in preliminary activities either before or following the walking, that they should be considered together, even if standing apart they would be de minimis. As we interpret the instructions of the Supreme Court, however, it makes no difference in this case.

### Conclusions of Law.
### De Minimis Non.

Much has been written in briefs submitted about "de minimis non," one laying foundation for discussion by treating the subject historically. But for the most part counsel devoted their efforts advocating legal principles on which there is no disagreement and very often the expounder lost sight of the fact that we are bound by the master's report. The question here is not whether the employees were compelled to be on the premises 14 minutes before starting or after quitting time. The Supreme Court has already upheld findings of the master that they were not. But most of the cases cited are along these lines and not at all in point.

Decisions on the vital issue "de minimis" leave something to be desired and we submit that the only real aid lies in those cases, bulletins, etc., which treat of the application of de minimis non to Sec. 7 (a) of the Fair Labor Standards Act; not in lawsuits involving three or four cents, nor what percentage of interstate commerce

is necessary to place some firm under the Act.

However, we do find in the Wage and Hour Manual 1944–1945, page 234, in answering a query as to how a certain employer was to compute work time for his employee who spent 15 to 25 minutes each day going between the job and the time clock, the Chicago Regional Attorney held that if the employer's records of hours actually worked by the employee were kept in good faith, any disparity between those records and time clock records might be accounted for by these factors, and the payroll records would be given weight in determining the hours worked. Here, though not exactly in point, is an indication of de minimis non since part at least if not all of that 15 or 25 minutes had to be used in walking.

In Vol. 5, Wage and Hour Reporter at page 148, answering an inquiry, the Public Contracts Administrator said:

"As to recorded time, the department makes allowances for a reasonable period of time to cover the period between the time an employee ceases work and the time he punches out on his card. However, a period in excess of 15 minutes is regarded as unreasonable."

This, of course, indicates 15 minutes only after work and presumably 28 minutes for coming and going was de minimis.

In Walling v. Peavy-Wilson Lumber Co., D.C., 49 F.Supp. 846, at pages 883 and 886, the log sawyers walked a distance from practically nothing to 1500 feet, under bad walking conditions, which would take them from 0 to a maximum of 12 minutes. The court held that:

"Between the time they get off the work train and the time they reached the actual point where they do work is so short that the issue is insignificant, and accordingly we shall not allow it as work-time."

This, of course, was walking one way, making at least 24 minutes daily which was "de minimis."

In Cameron v. Bendix Aviation Corporation, D.C., 65 F.Supp. 510, where plaintiffs were seeking to recover for time waiting in line to punch the clock, the court held that periods ranging from a fraction of a minute to 2½ or 3 minutes time did not constitute "considerable" periods of time within the meaning of the Administrator's ruling, or "employment" within the intent of the Act. This was de minimis.

In Buelow v. Connor Lumber & Land Co., Wis.Cir.Ct., 11 Labor Cases, par. 63,220, the court held that 5 minutes spent by an employee in preparatory activities prior to starting time could not be recovered since the amount involved was "insignificant." This case used the words "de minimis."

In 1944–1945 Wage and Hour Manual at page 1193, in response to an inquiry, the Public Contracts Administrator, who is also Administrator of the Wage and Hour Act, held that a period of some 5 to 10 minutes to permit the employee to get from the time clock to his place of work would not be regarded as working time under the Act. Thus, 20 to 40 minutes a day, if counted four ways, would be de minimis.

From the CIO (amicus curiae), on behalf of plaintiffs, came a reference to the Wage and Hour Manual 1944–1945, at page 242, which held that the employer could not deduct a 15-minute lunch period because the time consumed was "too short to utilize effectively in the employee's own interest and is more akin to a waiting period or short rest period." This is not in point unless we must consider it as "de minimis in reverse" and is therefore against plaintiffs.

Ulle v. Diamond Alkali Company, cited by plaintiffs and found in 8 WHR 1042, is not in point since this was a decree entered by consent of the parties covering portal-to-portal.

In 2 CCH Labor Law Reports, par. 33080, there is an opinion of the Solicitor's office of the Department of Labor, addressed to the National War Labor Board, and cited by the CIO (amicus curiae), which merely held that miners should be compensated for travel from the rim of the mine to their actual working place. The question of de minimis is not involved.

Before the Supreme Court in this very case, a letter attached to the brief of L. Metcalf Walling, the Administrator of the Wage and Hour Act, stated that 30 minutes used in preparing machinery for work was not de minimis and should be paid for.

These are the main cases cited by all parties. Plaintiffs presented no case directly on the "de minimis non" doctrine.

From the above it is apparent that this court not only could but should, by the great weight of what authorities there are, declare all walking and preliminary activities time involved in this case as de minimis.

We so hold as to "activities."

■ However, when we consider walking time the solution isn't quite so simple. On page 1194 of 66 S.Ct., the Supreme Court, in holding walking time to be compensable, said:

"Those arrangements in this case compelled the employees to spend an estimated *2 to 12 minutes* daily, if not more, in walking on the premises." (Emphasis ours)

With that statement before us, is this court required, as urged, to hold that when walking time reaches the total of 12 minutes daily it is not de minimis, past holdings of inferior courts, regulations, memoranda, opinions, letters, etc., of the Administrator of the Wages and Hours Act to the contrary notwithstanding?

If so just what did the Supreme Court include as walking time?

Our attention is challenged.

It is most essential that we make inquiry because if we are to follow the language of the court by reference or deduction in accepting a mandate of 12 minutes walking time as not de minimis, should we not follow the same court when it uses language that is direct, plain and unambiguous?

Let us then examine what the court said just before it mentioned those "2 to 12 minutes" and we find:

"But the time necessarily spent by the employees in walking *to* work on the employer's premises, following the punching of the time clocks, was working time within the scope of § 7(a)." (Emphasis ours)

And again, following the words "2 to 12 minutes" but in the same paragraph, the court stated what appears to (be its conclusion:

"It follows that the time spent in walking *to* work on the employer's premises, after the time clocks were punched * * * must be included in the statutory workweek." (Emphasis ours)

We have examined the Supreme Court's decision in vain to find any reference to "walking time" involved in coming *from* work as being compensable.

On page 1194 of 66 S.Ct., the court does refer to the same activities "in reverse," but these words are followed by a pointed reference to "activities" which throughout the opinion is always divorced from "walking time." If the Supreme Court meant to include walking "from" the job as walking time, wouldn't it have said so?

That is the first point.

The second is that the Supreme Court (66 S.Ct. 1194) refers to "walking time" as being compensable when it "bore no relation whatever" to the "convenience and necessity" of the employees and was "pursued necessarily and primarily for the benefit of the employer and his business."

It is elementary to this court that one who is on his way to his own lunch in a cafeteria set apart for him by his employer, or outdoors, is walking there for his own "convenience and necessity," and not "necessarily and primarily for the benefit of the employer and his business."

The cafeteria affords him an opportunity to eat his meals amid clean and comfortable surroundings. Here he gets away from his work. Here he meets with his fellow employees and talks about sports of the season, fishing, hunting, football, baseball, and some of their own common pleasures. A cafeteria in a plant that size could not be located in every department. It had to be in one central place. And while it undoubtedly helped the employer by increasing productivity, it was just as important, if not more so, to these workmen as individuals, since these employees were on piecework. The lunch hour provided them relaxation, and an opportunity to make more money when they returned to their jobs. Can we then say that the walking time at noon, under these circumstances, "bore no relation whatever" to "the employees' convenience and necessity"? Can we by any stretch of reasoning say that when an employee eats his

lunch he does so "necessarily and primarily for the benefit of his employer"? We think not. Such reasoning is specious and deceptively beautiful. And since only "walking time" for the "convenience and necessity" of the employer and "necessarily and primarily for the benefit of the employer" was specified as the kind of walking time to be computed as working time, what more clarifying statement from the Supreme Court to eliminate the noon hour walking time can this court receive?

Plaintiffs contend that the Tennessee Coal and Jewell Ridge cases govern the case at bar. Well, let us analyze those cases even though this court has never subscribed to the thought that either of them has very much in common on the facts with this case. Miners going down a mine shaft, jumping into a transport vehicle where at times some turned their ankles and others broke their legs; crouching down so as to avoid beams, heading, electric wires, and other inconveniences to comfort and to life itself; traveling long distances in the bowels of the earth, with water dripping from the sides and from above; then getting out and walking to the face of the coal, presents an entirely different picture than visualized when one walks through a modern factory, shielded and protected from both the heat and the cold, from the rain and the snow, from crossing railroad tracks, in the light of day and above the earth. Yet in both of these landmark cases no compensation was granted for going from the time clock to the shaft. In Tennessee Coal the district court included above-the-earth activities as among the compensable items of the employee, but the Court of Appeals reversed only this part of the decision, and the Supreme Court did not reinstate that element of compensation. In fact the Supreme Court said [321 U.S. 698, 64 S.Ct. 701]: "These activities consume but a few minutes." Attorneys for plaintiffs suggest that the miners "waived" this compensable item, but under the many decisions of the courts on the relationships between labor and capital, there can be no waiver of a fundamental right. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, at page 704, 65 S.Ct. 895, 89 L.Ed. 1296, and cases cited.

Granting that the Fair Labor Standards Act is an humanitarian instument, aimed at improvement of the relationship between capital and labor, but above all aimed to prevent exploitation of the laborer who under dire requirement of providing necessities of life for himself and his loved ones might make any kind of a bargain in order to get a job, still how can anybody claim that if we are to be guided by the principles enumerated in either the Tennessee Coal or the Jewell Ridge Co. cases, that walking time of the type and amount involved in this case can be considered as compensable "in light of the realities of the industrial world"?

### All "De Minimis."

We hold, therefore, that, accepting for the purpose of this decision the theory that the Supreme Court set at least 12 minutes of walking time daily as not being de minimis, it did so with one, if not two, restrictions to be used in computing what those 12 minutes should cover:

(a) That it is only the walking time TO and not FROM the work bench; or

(b) In no event can we consider walking time involved in going to and from lunch for one's own "convenience and necessity," and which is not *necessarily and primarily* for the benefit of the employer and his business." (Emphasis ours)

The maximum walking time under such yardstick that can be reckoned in favor of any plaintiff in this case is 6.2 minutes daily. Mould department. See note 69 F. Supp. page 715.

If, on the other hand, the Supreme Court did not intend to even intimate or indicate what it thought was de minimis in walking time, it is our opinion and we hold that we would not go lower than 12 minutes as above restricted (the minority opinion indicates that 10 minutes would surely be de minimis) and without setting any de minimis figure herein, hold all the walking and preliminary activities time consumed in this case is de minimis.

### Retroactivity.

We go one step further, and we hold that should we be in error in determining what

the Supreme Court meant; should it be held that the Supreme Court intended the walking time to be computed both ways, morning, noon and night, and that this pyramided walking time being over 12 minutes was not de minimis, we then believe that in all fairness to this defendant the rule of non-retroactivity should be applied in alleviation.

In this particular case this company relied upon the Wage and Hour Act as administered and interpreted by the Administrator and the courts. A representative of that department checked on the method of computing time and overtime at this plant in 1939 and placed its stamp of approval thereon. If the opinions, administrative letters, regulations, and decisions of our courts were followed this would warrant any industry, including this defendant, in not computing less than 20 or 25 minutes a day, in walking time and preliminary activities, as compensable before June 10, 1946. Tennessee and Jewell Ridge cases (Tennessee Coal, Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Coal Corporation v. Local No. 6167, U.M.W.A., 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534.) The doctrine that walking time and preliminary activities under some circumstances are compensable is not new. But a close analysis of cases that have passed upon the question indicates that they do not apply to the general field of manufacture, except where the employee admittedly had to report at a certain hour or the walking and preliminary activities time was "considerable" or "substantial." Never before has anyone attempted to bring walking and preliminary activities time consumed into such a narrow, picayunish, meager sphere. Furthermore we do not believe that the Supreme Court ever intended such an interpretation.

■ This is not the case of a plant protection man who has to don a uniform, respond to roll call, stand for dress inspection, look for his assignment, and walk to his post. Yellow Truck & Coach Mfg. Co. v. Edmondson, 6 Cir., 155 F.2d 367. This is not the case of firemen who, in order to relieve other firemen, had to come in early to be ready to take over. Ballard v. Consolidated Steel Corporation, D.C., 61 F. Supp. 996. This is an out and out manufacturing case, differentiated from coal mines and other specific types, and what applies here may later be held to apply to industry in general. And this court takes the position that since the question of retroactivity was never raised before the Supreme Court at any time, we have the duty of passing upon that question here "in conformity with the opinion and judgment of this court as according to right and justice and the laws of the United States." (Mandate). See also 12 Cyc.Fed.Procedure 621.

■■ Time and time again it has been held that the regulations of the administrator, his opinions, his letters, should carry great weight, United States v. American Trucking Association, Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345, Jewell Ridge Coal Corporation v. Local 6167 UM WA, supra, and applying that rule to the case at bar the plaintiffs cannot recover. Any change in walking and preliminary activities times to below 20 or 25 minutes daily, adding the two together and counting walking time as the time consumed going to work in the morning, going to and returning from lunch and then after work, would, we believe, call for a holding by this court that such new figure should apply only prospectively as a guide to industry, not retroactively as an unfair burden. Custom and usage should be considered.

All employers who were not even vaguely abiding by the administrator's previous rulings could and should be held retroactively. But under no circumstances do we believe that this defendant should be placed in that category. Not only this defendant but the manufacturing industry in general should always be able to rely upon those who must administer the Fair Labor Standards Act until the Supreme Court has spoken, and any change should put industry automatically on warning for the future. One should be protected for past acts done in good faith. Otherwise there can be no stability in an industrial world when tomorrow may see some new interpretation of the workweek that would disrupt our entire economic structure.

We grant that in other cases before this court the scope and effect of the Supreme

Court decision in this case has been distorted beyond recognition; but even here, when in our opinion a holding to the contrary would not be calamitous, we still believe that the rule of non-retroactivity should be applied.

This court in Anuchick v. Transamerican Freight Lines, Inc., D.C., 46 F.Supp. 861, at pages 866 and 867, in construing this very same Act but on a different point, said:

"In the light of this history it would be manifestly unfair to expect a business man to come to a conclusion on what these two laws meant when read together, under pain of heavy penalty if he didn't guess right. * * *

"* * * but where a group of men have made the laborious efforts that defendant and its competitors have to find out where they stand on these two laws it must be readily agreed that they should not be made to pay a penalty before that law was properly interpreted. * * *

"* * * How can we legally or equitably enforce a penalty for failure to conform with a statutory mandate when the nature of one's duty is not disclosed by the act itself?"

See also Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 148, 77 L.Ed. 360, 85 A.L.R. 254, where the court said:

"This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the Constitution of the United States is infringed by the refusal.

"We think the Federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed, there are cases intimating, too broadly * * * that it must give them that effect; but never has doubt been expressed that it may so treat them if it pleases, whenever injustice or hardship will thereby be averted."

See also Judge (now Chief Justice) Vinson's opinion in Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025.

### Other Claims.

While defendant contends that plaintiffs cannot recover in this case for the reason that in the original suit they were not seeking compensation for time consumed in walking or preliminary activities, it is sufficient for this court to know that this point was previously advanced before the Supreme Court and then remanded to our attention.

In view of our previous findings and opinion we do not deem it necessary to touch upon other reasons advanced by defendant why plaintiffs should not recover, such as offsetting against any plaintiffs' walking time the amount of time used by employees going to the wash room, or for other personal pursuits, nor the claim that a bonus really given as a gift at Christmas or for vacation can offset possible damages. Nor can we take seriously the claim of plaintiffs that the Supreme Court meant that all walking time over 2 minutes a day or all preliminary activities that contributed in any way to the benefit of the employer is compensable. We believe that if the Supreme Court meant this it would have said so.

### "In Light of the Realities of the Industrial World."

We conclude this opinion by inserting an unusual observation; but chance has made this an unusual case. We have, of course, endeavored to abide by the mandate of the Supreme Court and we are not unmindful of the admonishment set out in its opinion that our decision be made "in light of the realities of the industrial world." In this connection we have not considered those who seemingly believe that the working man is entitled only to what has often been termed "the crumbs from the table"; nor have we considered the equally abhorrent ideology of others who would seek by their strained interpretation of what the Supreme Court said in this case to further widen the gulf between capital and labor. We ought to have in mind always that we

722

are in great part an industrial nation where very recently mass production and fair relations between capital and labor served us so well; that we should look upon labor and industry as a team pulling in the same direction, or as husband and wife where the give or the take is not all on one side.

We believe that "in light of the realities of the industrial world" means that our decision should, if consistent with law, aid in promoting accord and not inciting discord, and that we should treat industry fairly while granting labor all its rights. We believe that "in light of the realities of the industrial world" means that without labor there would be no industry, and without industry there can be no labor.

It was in the light of all the realities of the industrial world, not only part, that we have attempted to decide this case.

### Conclusion.

We cannot, however, reach our final decision without expressing some regrets for the original plaintiffs. Our recent observances have proven to us that when these employees claimed they were actually working at producing pottery before seven o'clock in the morning and one o'clock in the afternoon, "jumping the gun," and not having that extra time counted in their workweek, they were telling the truth. We believed it then—we believe it now: but the master in 1943 found otherwise, and under the rules we must follow the master's findings.

Let us not be understood as holding that all portal-to-portal suits should be dismissed. There may be, and perhaps are, many instances where walking and the preliminary activities time consumed is of such an amount as to call for compensation that the worker is not now receiving. But this is not one.

Four years ago we held in effect that time consumed in walking and preliminary activities in this case was not substantial and too insignificant to be considered. We see no reason to change that decision.

A judgment consistent with this opinion may be submitted for our signature.