**Edward NARDONE et al., Plaintiffs,**

**v.**

**GENERAL MOTORS, INC., Defendant.**

**Civ. A. No. 469–58.**

United States District Court
D. New Jersey.
June 26, 1962.

Weiner, Weiner & Glennon, by Otto C. Staubach, Elizabeth, N. J., for plaintiffs.

Carpenter, Bennett & Morrissey, by Richard H. Hughes and Laurence Reich, Newark, N. J., for defendant.

COOLAHAN, District Judge.

This is a suit for recovery of wages for uncompensated time spent in performing various activities allegedly relating to the general job of metal finisher in the body shop of the B.O.P. Assembly Division Plant of General Motors at Linden, New Jersey.

The action was instituted by 53 plaintiffs, each seeking individual recovery. The action was brought pursuant to 29 U.S.C.A. § 216(b), popularly known as the Fair Labor Standards Act. All of the plaintiffs were employees of General Motors. The period of time covered by this suit is April 25, 1956 to April 25, 1958 inclusive. The case was first tried before the late Judge Morrill and is now here upon stipulation that this Court decide the case on the record and briefs as originally submitted.

The record discloses that Judge Morrill was of the opinion that this suit was not a class action. Of the 53 plaintiffs involved only 12 testified. This procedure was followed because the Court wished to expedite matters and therefore requested that the scope of all claims be covered by as few witnesses as possible. The testimony of the 12 men therefore covered all types of jobs in the department in question. Since this suit is for individual recovery by each plaintiff the problem of the effect of the judgment upon those who did not testify arises.

The leading case in this area is the Third Circuit decision of Pentland v. Dravo Corp., 152 F.2d 851 (3rd Cir., 1945). This opinion discusses the problem in terms of the spurious class action and reaches a conclusion that only those plaintiffs who testified can be bound by the judgment. Therefore, it is not clear whether the remaining 41 plaintiffs will be precluded by the disposition of this case. However, since all the plaintiffs are similarly situated, in that the activities for which they seek compensation are alike, the ruling of this Court should effectively serve notice upon all as to the possible disposition of their individual claims.

Plaintiffs' basic contentions are that the employees involved performed certain activities integrally related to their employment for which they were not compensated. These activities may be summarized as including clothes changing; washing up; drawing coveralls, gloves and tools and putting same away after work.

Since this suit is in an individual capacity the time spent in performing the above activities varies with the particular plaintiff who allegedly performed those tasks. For the purposes of this opinion we will deal with the plaintiff claiming the maximum in time spent doing these activities.

The activities in question can basically be divided into pre-shift and post-shift time. The pre-shift time is before this Court based upon the recollection by the plaintiffs as to the time spent in performing those tasks. The estimates vary but in cases of this nature such estima-

tion is a proper procedure. See DeRose v. Eastern Plastics, Inc., 134 F.Supp. 805 (W.D.Penn.1955). The pre-shift activities include changing clothes; obtaining tools from a tool box (tool box was located right next to the assembly line); obtaining new tools from the foreman; putting on coveralls, gloves, aprons, goggles and hoods (hoods were only worn by certain workers). As to the post-shift activities they included putting away tools; taking off coveralls, etc.; washing up; and taking a shower at home. The post-shift activities are subject to a more strict limitation than the pre-shift since there is some recorded date available consisting of the punchout time record which appears on the office time cards. Judge Morrill indicated that he believed this punchout time would provide a ceiling on the plaintiffs' recovery, if any, since this was the last act performed before leaving the plant. This punchout time, of course, does not limit the time allegedly spent showering. Using this data as supplied in the appendix, it is interesting to note that the greatest amount of time spent in post-shift activities was 6.16 minutes on the average, *and that by only one plaintiff*. Certain plaintiffs spent less than 2 minutes, on the average, in leaving work after the whistle blew. It must also be pointed out that all the activities listed above were not performed by all the plaintiffs on each working day, but rather encompass *all the possible activity* for which a plaintiff could claim compensation. It is also interesting to note in assessing the plaintiffs' credibility that the average punchout time, per the cards, is for the most part less than the time testified to by the plaintiffs on the stand. This suggests that there was an inaccurate estimate of the time needed for each activity by the plaintiffs.

There seems to be two major questions of law present. The first question to be decided is whether or not any of the claimed activities fall into the group of compensable tasks covered by the F.L.S.A. If plaintiffs can establish that any or all of the tasks are compensable we then reach the question of the *de minimis* barrier.

In determining which activities comprise compensable tasks under the F.L.S.A., resort must be had to legislative history, administrative rulings and the case law as determined by the Courts. Changing clothes and showering are normally not considered to be compensable tasks. 29 C.F.R. § 790.7(g) clearly states checking in, changing clothes, washing up or showering are all activities which are considered either preliminary or postliminary and hence not compensable. This is supported by the legislative history as set out in 93 Cong.Rec. 2297–8 (80th Cong. 1st Sess. 1947) and Dunning v. Q. O. Ordnance Corp., 228 F.2d 929 (8th Cir., 1955), 233 F.2d 902 (8th Cir., 1956), cert. denied 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162 (1956), and numerous other decisions. In the face of this authority plaintiffs assert two cases in their behalf. They are Steiner v. Mitchell, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) and Mitchell v. King Packing Co., 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956). Steiner is the plaintiffs' principal authority and it is noteworthy that this case recognized the basic principle mentioned at the beginning of this paragraph. In Steiner the workers dealt with highly toxic lead compounds and fumes throughout the work day. A Tennessee statute required that washing and showering facilities be maintained and utilized on the employer's premises. Safe operations required the use of these facilities and a changing of work clothes. (These work clothes were supplied by the employer since due to the rapid deterioration the employees could not have afforded their maintenance). This washing took 30 minutes a day for all employees and was required by the employer. The employer's insurance carrier required the employer to adopt this procedure. The question in the case was whether or not these tasks were part of the principal activity and hence compensable. Said activities were held to be made necessary by the nature of the work and the Court felt they fulfilled mu-

tual obligations between the employer and the employee and were an integral part of the employee's duties and therefore part of the principal activity under the F.L.S.A., and not exempted by the Portal Act. It must be pointed out that there was no question of damages involved in that case since the suit was for prospective relief instituted by the Secretary of Labor to compel the company to keep a record of the time spent in performing said activities. To gain the benefit of this decision it becomes necessary for the plaintiffs to show that the changing of clothes and washing up in the case at bar would be an integral part of their employment. They presented an expert witness who testified to the dangers of working with lead substances. However, the expert had never been at the plant, nor had he examined any of the men claiming benefits. There is no evidence that any dangerous condition existed at the plant or that the hygienic facilities were not adequate. New Jersey has no corresponding State Law as in Steiner, nor is there any insurance company requirement. In fact the General Motors Plant has been approved as to safety. The company does not require the men to change clothes nor to wash up, although it does provide basins for this latter purpose.

The second case relied on by the plaintiffs is King Packing. In that action the workers were required to spend time sharpening knives outside of their regular shift time spent in butchering meat. In that case the company required the workers to spend this time and in many instances the workers had to provide their own knives. The sharpening activities included the company's equipment as well as the workers' tools and was required to be performed outside of shift time. This was also an *in futuro* case and did not seek damages. The Court held the knife sharpening to be an integral part of the job and hence allowed the relief sought.

The record and briefs in the case at bar indicate many points of divergence between the decisions in Steiner and King and the instant case. To place themselves under King plaintiffs argue that they were required to keep their tools ready before the shift started. However, they have admitted that they would not be subject to discipline or discharge for failure to do any of the tasks claimed on their own time. It can safely be assumed that there is no employer rule, either express or implied, that the plaintiffs perform any activities of a substantial nature on their own time. Bland statements by the plaintiffs that the tasks in question are integrally related to their principal activity will not bring them under the rationale of either Steiner or King.

The case of Mitchell v. Southeastern Carbon Paper Co., 228 F.2d 934 (5th Cir. 1955) disallowed recovery under a similar factual situation to the case at bar. Even where there was an employer requirement as to changing and washing up recovery was disallowed in Dunning v. Q. O. Ordnance Corp., supra.

The next point in controversy is the effect of 29 U.S.C.A. § 203(o). That section of the F.L.S.A. bars washing up and clothes changing time from overtime consideration where such time is the subject of a collective bargaining agreement or is excluded by custom or practice under such an agreement. It is the defendant's contention that the agreement between the Union and the employer here provides for this problem. The plaintiffs contend that there was no agreement between management and labor and hence say there could have been no custom or practice since the matter was entirely unresolved from the Union's point of view. The evidence discloses that in the negotiations prior to entering into the 1946 agreement there was a demand for a 5 minute washup time prior to lunch and before quitting time (D–1). This was eventually resolved by stating that the plant policy would continue (nonpayment for such time). The reference to policy indicates a custom that such time was traditionally uncompensated. In later negotiations of collective bargaining agreements (D–2 and D–3)

there is confirmation of this fact. The Union continued to press for such payment but met with no added success. It is outside the confines of this case, but D–7 discloses that the agreement entered into on October 21, 1958 allowed certain designated jobs in this department up to 12 minutes per day for pre-shift, noontime and after-shift change and clean up time. This 12 minutes was to be charged as straight time and not to be considered for the purpose of overtime. The defendant has shown the history of its dealings with the Union as being that as would exempt washing and clothes changing time from payment. It also has shown that the collective bargaining agreement negotiations encompassed such a problem. Therefore they reason that the statute precludes the plaintiffs' recovery for these activities. This seems to be a logical interpretation in light of the above circumstances and the information set out in 29 C.F.R. § 790.10 (c). There is some merit in plaintiffs' argument that there must be accord between management and labor since it would be manifestly erroneous to permit subversion of the F.L.S.A. by not allowing benefits to employees because the Union could not get such recognition in its contract. However, they do not overcome the argument that the policy did exist, nor can they show that the negotiations entered into were other than on equal basis. If the activities were in fact necessary to perform the work there is strong reason to believe the Union would have been able to secure their payment through negotiation.

■ The parties are also in disagreement as to the burden of proof necessary to establish compensable activities and the time spent therein. The governing test is laid down in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), and states that the employee need only show that he has in fact performed work for which he was improperly compensated and must produce sufficient evidence to show the amount of that work as a matter of just and reasonable inference.

Plaintiffs argue they sustained this burden by showing compensable activity and giving an estimate of the time spent, thereby shifting the burden of proof to the employer. They cite Handler v. Thrasher, 191 F.2d 120 (10th Cir. 1951) as their authority. This case supports their position only if they are capable of creating the favorable inference required by Mt. Clemens. Here each of the plaintiffs allege different times spent, and most of them state that certain tasks were performed on some days and on other days not at all. This, plus the great disparity between the times estimated in different parts of the testimony of individual plaintiffs, (contradicting themselves), negates their contention. See Eaknis v. Alvarado Broadcasting Co., 125 F.Supp. 87 (D.N.M. 1954); Davies v. Onyx Oils and Resins, Inc., 63 F.Supp. 777 (D.N.J.1946); McIntyre v. Joseph E. Seagram & Sons Co., 72 F.Supp. 366 (W.D.Ky.1947). These cases point out how the favorable inference is created and the extent to which the plaintiffs' credibility must be scrutinized.

■ The final point involves the *de minimis* question. Defendant contends that the plaintiffs are precluded from recovery by virtue of this doctrine. Such a doctrine has even found recognition in the Mt. Clemens decision. The concept is to deny recovery for otherwise compensable activity if the time involved is only a matter of minutes or seconds. The plaintiffs argue they can overcome this rule by virtue of the fact that the time involved herein spans a two year period therefore making it substantial and not minimal. However, this misconstrues the purport of the Mt. Clemens doctrine since the basic tasks still are in terms of minutes per day. Plaintiffs cite the District Court Opinion in Tobin v. King Packing Co., 107 F.Supp. 369 (D.Idaho, 1952) affirmed 216 F.2d 618 (9th Cir. 1954) reversed 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956) which indicates by way of dicta that 10.4 minutes a day is not *de minimis*. However, the District Court went on to hold for the defendants

and disallowed recovery. Here there is little showing of any great amount of time spent. The average pre-shift time spent was testified to as 6 to 10 minutes per day. This figure was further reduced during cross-examination. The post-shift time comprised 6.16 minutes at the outside and this was only in one case. Therefore the time spent seems to have been insubstantial. The cases of Seagram, supra and McComb v. C. A. Swanson & Sons, 77 F.Supp. 716 (D. Neb.1948) support the defendant's contentions. In McComb (which had many facts similar to the instant case) the *de minimis* rule was held applicable, and Seagram held from 10 to 20 minutes per day to be *de minimis*.

It is the Court's opinion that an outer limitation on the number of minutes is not of itself the proper application of the *de minimis* rule. It is a doctrine which must be applied with common sense to the facts before the Court. An artificial time limit will not suffice. Here, in light of the uncertainty of how often the tasks were performed, or how long a period was required for their performance, and in the face of the punch card ceiling time, I would find that if the plaintiffs indulged in any compensable activity at all (perhaps getting tools or other equipment from foreman) then such time was merely *de minimis* and not recoverable.

A trend of decisions indicates that each case must be determined on its own facts. D. A. & S. Oil Well Servicing, Inc. v. Mitchell, 262 F.2d 552 (10th Cir. 1958). The entire picture must be considered along with the "industrial realities" of the situation. See Mitchell v. Stewart Brothers Construction Co., 184 F.Supp. 886 (D.Neb.1960) and Laudenslager v. Globe-Union & Co., 180 F.Supp. 810 (E.D.Pa.1958), affirmed 274 F.2d 814 (3rd Cir. 1960). The latter case involved lead storage battery workers as did Steiner and yet applied a rule of reason to reach a practical solution.

I hereby find in favor of the defendant on the grounds that plaintiffs have failed to establish the compensable nature of the clothes changing and washing time and have also failed to establish other than *de minimis* time spent in any other activity.

The form of this Opinion will be held to encompass findings of fact and conclusions of law as per F.R.Civ.P. Rule 52, 28 U.S.C.

Let an appropriate order be submitted.