**Robert L. McKEE, Plaintiff-Appellant,**

v.

**Charles H. TURNER, Defendant-Appellee.**

No. 71–2335.

United States Court of Appeals, Ninth Circuit.

Jan. 15, 1974.

Gerald R. Pullen (argued), Portland, Or., for plaintiff-appellant.

Sidney I. Lezak, U. S. Atty., Norman Sepenuk, Asst. U. S. Atty. (argued), Portland, Or., for defendant-appellee.

Before CHAMBERS, BROWNING and ELY, Circuit Judges.

OPINION

CHAMBERS, Circuit Judge:

This is much to do about nothing, but we must do it.

McKee, now a lawyer, is a former Portland policeman. Turner is an assistant United States attorney. McKee sued Turner in the state court at Portland for defamation allegedly contained in a letter written by Turner to the chief judge of the District of Oregon. McKee prayed for $150,000.00 in damages.

There was a removal to federal court because of Turner's status, 28 U.S.C. § 1442(a)(1). There, applying Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the district court dismissed the action.

Turner's position is that McKee had done something improper in defending one L. R. Bagby on a narcotics charge.[1] If a devastating ploy was intended, it

---

1. Bagby's trial was before the Honorable Alfred T. Goodwin, then a United States District Judge.

failed. Bagby was convicted and sentenced to some twenty years in prison.

Turner says he was obligated under Rule 4 of the District Court to report what McKee had done in the defense of his client. (McKee was appointed under the Criminal Justice Act.)

This is what Turner reported by the letter he sent to the chief judge: Instead of asking the United States attorney for the criminal record of one Thurman, a principal witness [2] who was to testify, McKee had used self-help for his case. McKee had gone to his old haunts —the police station—and there obtained the criminal record of Thurman to use for impeachment. There he also found state warrants unserved for Thurman. He told the Portland police that they could find Thurman and arrest him at Bagby's federal trial. This the Portland police did after Thurman had testified.[3] The plaint to the chief district judge [4] was that the Portland police might have arrested Thurman before he testified or Thurman might have become aware of the waiting arms of the Portland police and all of this might have completely upset Thurman and he might have been a failure as a witness. Turner is sure McKee intended to disrupt the trial. But what might have happened never happened. So, the letter to the chief judge distills down to: McKee had malice in his heart when he suggested to the Portland police that they could perform their legal duty on the morrow.

We affirm the judgment of the district court, but on our own ground. At the opening of his oral arguments in our court, counsel for McKee, in the presence of McKee, began with a statement that the plaintiff wanted no money from Turner—he just wanted an apology from Turner. He closed with the same statement. Thus, he completely vitiated the prayer of his complaint.

We, therefore, hold that McKee's case is de minimis,[5] and does not present a justiciable controversy. We are not commissioned to run around getting apologies. However, to McKee we apologize for Turner. Turner made a mistake in judgment in reporting the incident to the chief judge. If, as Turner thinks, McKee had a black motive, it did no damage. If it was intended that the police would harass the state witness by arresting him before trial or terrorize him by the mere presence of the state officer, and if Turner had any real proof of such a plot, that would be different. But all Turner can say was that it might have happened.

We think that we can take judicial notice that state officers and federal officers are at their best behavior in each other's courthouses. It is rare that they interfere in the other's backyard, and McKee would have known this.

As it is, whatever McKee's thoughts were, Turner has left McKee in a position where the latter can fold his arms and smugly say, "All I did was my duty as a good citizen."

The assistant United States attorney needs to wait for a better case to report to the chief judge.

No costs will be allowed.

Affirmed.

---

2. Thurman had pleaded guilty to a separate charge and was awaiting sentence. He was named in Bagby's indictment as a co-conspirator but was not indicted in Bagby's indictment.

3. At the commencement of the trial, the Portland police officer at the Federal Courthouse made contact with Turner who advised the officer to wait.

4. There was other limited distribution of the letter.

5. Cf. Northern v. Nelson, 448 F.2d 1266 (9th Cir. 1971).