Ted L. LINDOW, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 82–3151.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 1983.

Resubmitted Feb. 27, 1984.

Decided July 27, 1984.

Stephen E. Lawrence, Richardson, Murphy & Nelson, Portland, Or., for plaintiffs-appellants.

Sidney I. Lezak, U.S. Atty., Portland, Or., for defendant-appellee.

Before CHOY and CANBY, Circuit Judges, and ORRICK *, District Judge.

CHOY, Circuit Judge:

Plaintiffs appeal from the district court's denial of their claim for overtime compensation under the Fair Labor Standards Act (FLSA). We affirm.

Employees and former employees of the Northern Division of the Army Corps of Engineers (Corps) worked as power plant operators, control room operators and general foremen of eight hydroelectric dams located along the Columbia and Snake rivers. They seek overtime compensation for 15 minutes of work per day for a period commencing 3 years prior to the filing of their lawsuit. They allege that the Corps required them to report to work 15 minutes before the start of their scheduled shifts to (1) review the log book regarding previous shift activities and plant conditions; (2) exchange information and clarify log entries with the employees leaving their shifts; (3) be available to relieve an outgoing employee who was operating the navigational locks at the time of the shift change; and (4) open and close project gates to gain entry to the dam projects. The Corps did not compensate plaintiffs for this pre-shift work. The parties consented to a trial before a United States Magistrate.

## I. REVIEW OF THE LOG BOOK AND EXCHANGE OF INFORMATION

The district court found that employees arrived at work about 15 minutes early each day and sometimes used part of this time to read the log book and to exchange information. For the rest of the time, the court found that "they engaged in social conversation and performed non-work related activities." The court found that the employees spent an average of 5 to 15 minutes, usually closer to 5 minutes, to

* The Honorable William H. Orrick, Jr., United States District Judge for the Northern District of California, sitting by designation.

read the log book, and 2 to 3 minutes to exchange information. Therefore, plaintiffs spent about 7 to 8 minutes per day reading the log book and exchanging information, though this work was not always performed before their shifts.

### A. Characterization of Pre-Shift Activities.

■ The district court held that these pre-shift activities were preliminary activities and therefore exempt from the overtime requirements. Under section 4(a) of the Portal-to-Portal Act, employers are not required to pay overtime compensation for "activities which are preliminary to or postliminary to said principal activity or activities ...." 29 U.S.C. § 254(a)(2). Pre-shift activities are compensable if they are an "integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956). The district court found that the reading of the log book and exchanging of information were necessary and integral parts of the employees' principal activities, but held that they were preliminary activities because they were "neither necessary nor required to be performed before the start of the shift."

■ The evidence supports the district court's finding that the Corps did not require the employees to report early. Most of the employees testified that they were never specifically ordered to report early, but that it was the custom to do so. They were never formally reprimanded for not arriving early. There was evidence that employees felt pressure from fellow workers to arrive early so that outgoing employees could leave 5 minutes early. Moreover, on July 18, 1977, the Corps issued a letter, known as the Westrick letter, stating its policy that employees were not required to arrive early to review the log book and exchange information.

The court also found that the employees did not have to read the log book and exchange information prior to the start of their shifts. The evidence showed that the employees did not always finish reading the log book or even look at the log book before their shifts, often because they did not arrive early enough to work. Moreover, all the necessary information could be derived from the log book.

■ Plaintiffs, however, correctly argue that the district court erred in holding that an employer must require an employee to arrive early to be liable for overtime compensation.[1] An employer must pay overtime when he "suffers" or "permits" an employee to work in excess of 40 hours. 29 U.S.C. §§ 203(g), 207(a). We have interpreted the words "suffer" or "permit" to mean "with the knowledge of the employer." *Fox v. Summit King Mines*, 143 F.2d 926, 932 (9th Cir.1944). Relying on *Fox*, we have more recently held that "an employer who knows or should have known that an employee is or was working overtime" is obligated to pay overtime. *For-*

---

1. The Corps argues that *Steiner v. Mitchell*, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956), *Dunlop v. City Electric, Inc.*, 527 F.2d 394 (5th Cir.1976), and *Blum v. Great Lakes Carbon Corp.*, 418 F.2d 283 (5th Cir.1969), *cert. denied*, 397 U.S.. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970), hold that overtime work not required is not compensable. The Corps, however, misreads these cases. *Steiner* established the general rule that FLSA limits overtime compensation to those activities which are integral and indispensable to the principal activities of the employee. 350 U.S. at 256, 76 S.Ct. at 335. *Blum* later held that employees were not entitled to overtime compensation because the district court found, among other things, that no benefit inured to the company. 418 F.2d at 287. In so holding, the court did give weight to the lower court's finding that "no plaintiff was required by the company to report early to work ...." *Id.* It did not, however, rule that employers are only liable for overtime compensation for work they require.

Similarly, the *Dunlop* court noted that the Portal-to-Portal Act excluded from FLSA coverage activities undertaken for the employees' own convenience, not required by the employer and not necessary for the performance of the employees' duties. 527 F.2d at 398. In its test to determine whether activities are necessary and indispensable to principal activities, the *Dunlop* decision does not require that the activities be compelled by the employer. *See id.* at 400–01.

*rester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981). "An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Id.*

▪ Plaintiffs also correctly assert that the district court erroneously ruled that the pre-shift work was preliminary because the employees could have performed it during their regular working hours. As the Department of Labor stated in an interpretive bulletin, "Congress intended the words 'principal activities' to be construed liberally ... to include any work of consequence performed for an employer, *no matter when the work is performed.*" 29 C.F.R. § 790.8(a) (footnote omitted). We show great deference to an administrative interpretation given by the agency charged with the statute's administration. *See Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Dunlop v. City Electric, Inc.*, 527 F.2d at 398 & n. 5 (§ 790.8(a) given great weight). The district court cites no authority, nor has this court found any, which suggests that an employee's labor is not integral and indispensable if it could have been performed during regular hours. As long as the work is "suffered" or "permitted" outside of normal hours, the work is compensable.

▪ Despite these erroneous rulings, we affirm the district court's decision. Although prior to the Westrick letter the Corps "suffered" or "permitted" the overtime work[2], plaintiffs reported early for their own convenience. Employees who re-

port early to relieve outgoing employees before the end of their shifts do so for their own convenience rather than for the company's benefit. *See Blum v. Great Lakes Carbon Corp.*, 418 F.2d 283, 287 (5th Cir. 1969); *Jackson v. Air Reduction Co.*, 402 F.2d 521, 524 (6th Cir.1968). In this case, the district court found that "it was often the practice of the employees to leave work up to 5 minutes before the end of their shifts. This was possible only if the replacement shift was present and ready to assume the shift 5 minutes early." Moreover, as the district court concluded, evidence showed that prior to the start of their shifts, plaintiffs "engaged in social conversation and performed non-work related activities." Many of the employees testified that they drank coffee and socialized before their shifts. To the extent plaintiffs arrived early for these reasons, their claim for overtime compensation is without merit.

▪ Once the Corps issued the Westrick letter, it did not even "suffer" or "permit" the overtime work. An employer cannot escape its obligation to pay overtime compensation for necessary and indispensable work that it expects to be performed outside of normal hours or that must be performed prior to a shift simply by instructing employees not to report early. *See Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir.1966); *Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir.1951). The employees in this case, however, could have performed the pre-shift work during regular hours. The Westrick letter, therefore, relieved the Corps of its liability to pay overtime compensation.[3] Otherwise, the Corps

---

**2.** Although the Corps did not require the work, which could have been performed during regular hours, the Corps knew or should have known of the overtime work. Before the Westrick letter, it had long been the custom for employees to report early and sometimes read the log book and exchange information before the start of their shifts.

**3.** In his separate concurrence, Judge Canby argues that the Westrick letter does not conclusively establish that the Corps did not "suffer" or "permit" the work to be done outside of the

normal shift. He relies on *Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir.1966), for the proposition that the mere issuance of instructions does not relieve the employer of liability if he knows and allows the work to be done. The *Wirtz* case, however, is factually distinguishable from ours. In *Wirtz*, the court held that an employer's instructions to a working foreman at a cattle auction yard not to work overtime did not relieve it from liability for overtime compensation. The employee "worked irregular hours, night and day, seven days a week." *Id.* Because the nature of the work required the em-

would have no means of protecting itself from claims of overtime compensation. Moreover, the Corps did not pressure or even encourage the employees to report early to work. As the district court found, the Corps did not formally reprimand, dock, or give a poor evaluation to any employee for not reporting early.

### B. *The De Minimis Doctrine.*

The district court held that the 7 to 8 minutes spent by employees reading the log book and exchanging information, even if not preliminary, was *de minimis* and therefore not compensable. Insofar as plaintiffs engaged in pre-shift work, we agree with the district court that the time was *de minimis.*

■ This is a case of first impression for this court applying the *de minimis* rule to claims of overtime compensation under FLSA. As a general rule, employees cannot recover for otherwise compensable time if it is *de minimis.* The Supreme Court noted:

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 1195, 90 L.Ed. 1515 (1946).

■ An important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work. There is no precise amount of time that may be denied compensation as *de minimis.* No rigid rule can be applied with mathematical certainty. *Frank v. Wilson & Co.,* 172 F.2d 712, 716 (7th Cir. 1949); *Nardone v. General Motors, Inc.,* 207 F.Supp. 336, 341 (D.N.J.1962). Rather, common sense must be applied to the facts of each case.

Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable. *See, e.g., E.I. du Pont De Nemours & Co. v. Harrup,* 227 F.2d 133, 135–36 (4th Cir.1955) (10 minutes); *Green v. Planters Nut & Chocolate Co.,* 177 F.2d 187, 188 (4th Cir.1949) ("obvious" that 10 minutes is *de minimis* ); *Carter v. Panama Canal Co.,* 314 F.Supp. 386, 392 (D.D.C.1970) (2 to 15 minutes), *aff'd,* 463 F.2d 1289 (D.C.Cir.), *cert. denied,* 409 U.S. 1012, 93 S.Ct. 441, 34 L.Ed.2d 306 (1972); *see also Hodgson v. Katz & Besthoff, # 38, Inc.,* 365 F.Supp. 1193, 1197 n. 3 (W.D.La.1973) (summary of *de minimis* holdings). *But see Usery v. City Electric, Inc.,* 23 W.H. Cases 256, 257 (W.D.Tex. 1976) (15 to 20 minutes not *de minimis* ).

■ The *de minimis* rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes. *See* 29 C.F.R. § 785.47. Employers, therefore, must compensate

ployee to work outside of regular hours, the employer could not avoid compensating the employee *for overtime simply by instructing the* employee not to work overtime. In our case, however, the employees could have performed the tasks during regular hours and the record shows that the Corps did not exert pressure on the employees to report early. The Corps, therefore, did not "suffer" or "permit" the work to be done when it instructed the employees not to work overtime.

We do not hold that an instruction standing alone conclusively establishes that an employer does not "suffer" or "permit" work to be done. If the nature of the work required overtime or if the employer pressured the employees to work

overtime, an instruction should not operate to defeat a claim for overtime compensation. If, however, the employees could have performed the work during regular hours and the employer did not pressure the employees to work overtime, an instruction relieves the employer from liability for overtime compensation. We choose not to read *Wirtz* as holding that an employer's instruction not to work never relieves it from liability for overtime. Otherwise, employers would not have any reasonable *means of defending against claims for overtime compensation made by employees who voluntarily report early for work, short of locking their doors prior to the start of a shift.

employees for even small amounts of daily time unless that time is so miniscule that it cannot, as an administrative matter, be recorded for payroll purposes. Accordingly, the Court in *Anderson* reasoned that overtime compensation for "a few seconds or minutes" is *de minimis* "in light of the realities of the industrial world." 328 U.S. at 692, 66 S.Ct. at 1195. *See* Veech & Moon, *De Minimis Non Curat Lex,* 45 Mich.L.Rev. 537, 551 (1947) (*Anderson de minimis* rule concerns "just plain everyday practicality").

██ In addition, we will consider the size of the aggregate claim. Courts have granted relief for claims that might have been minimal on a daily basis but, when aggregated, amounted to a substantial claim. *See Addison v. Huron Stevedoring Corp.,* 204 F.2d 88, 95 (2d Cir.) (less than $1.00 per week not *de minimis* ), *cert. denied,* 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953); *Glenn L. Martin Nebraska Co. v. Culkin,* 197 F.2d 981, 987 (8th Cir.) (30 minutes per day over 1½ years not *de minimis* ), *cert. denied,* 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 671 (1952); *Landaas v. Canister Co.,* 188 F.2d 768, 771 (3d Cir. 1951) ($21.67 to $256.88 per week over 3 years not *de minimis* ); *Schimerowski v. Iowa Beef Packers, Inc.,* 196 N.W.2d 551, 555–56 (Iowa 1972) (15 minutes per day, amounting to verdicts ranging from $248.04 to $508.44, not *de minimis* ). *But see Nardone v. General Motors, Inc.,* 207 F.Supp. 336, 340 (D.N.J.1962) (*de minimis* rule "in terms of minutes per day"). We would promote capricious and unfair results, for example, by compensating one worker $50 for one week's work while denying the same relief to another worker who has earned $1 a week for 50 weeks. *See Addison,* 204 F.2d at 95.

Moreover, courts in other contexts have applied the *de minimis* rule in relation to the total sum or claim involved in the litigation. *See McKee v. Turner,* 491 F.2d 1106, 1107 (9th Cir.1974) (request for an apology *de minimis* ); *Northern v. Nelson,* 448 F.2d 1266, 1267 (9th Cir.1971) ($1.05 claim *de minimis* ); *see also Kostiuk v. Town of* *Riverhead,* 570 F.Supp. 603, 610 (E.D.N.Y. 1983) (summary of *de minimis* holdings). In this case, if the aggregate claim is insubstantial, we may dismiss it as groundless and unreasonable. *Cf. Kostiuk,* 570 F.Supp. at 610.

██ Finally, in applying the *de minimis* rule, we will consider whether the claimants performed the work on a regular basis. *See Smith v. Cleveland Pneumatic Tool, Co.,* 173 F.2d 775, 776 (6th Cir.1949) (unpaid working time *de minimis* where "not a daily occurrence"); *Hodgson v. Katz & Besthoff, #38, Inc.,* 365 F.Supp. 1193, 1197 (W.D.La.1973) (court considered whether work "happened with a fair amount of regularity"); 29 C.F.R. § 785.47 (employer should compensate "fixed or regular" working time, however small); *see also Atkins v. General Motors Corp.,* 701 F.2d 1124, 1129 (5th Cir.1983) (2 isolated instances over 6 to 8 weeks *de minimis* ); *Marshall v. Fabric World, Inc.,* 23 W.H. Cases 414, 421 (M.D.Ala.1977) (sporadic work *de minimis* ). Similarly, the uncertainty of how often employees performed the tasks and of how long a period was required for their performance are also relevant. *See Nardone v. General Motors, Inc.,* 207 F.Supp. at 341; 29 C.F.R. § 785.-47.

To summarize, in determining whether otherwise compensable time is *de minimis,* we will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.

██ In this case, plaintiffs' claims are *de minimis.* As an administrative matter, the Corps would have had difficulty recording the overtime. Although the Corps did pay overtime on some occasions for as little as 5 minutes of overtime, the Corps had no consistent policy to pay overtime for less than 15 minutes of work. As a general rule, the Corps did not pay overtime for intervals of less than 15 minutes. There was also a wide variance in the amount of pre-shift time spent on compensable activities as opposed to social activities. Al-

though plaintiffs spent an average of 7 to 8 minutes a day reading the log book and exchanging information, they did not always perform these duties before their shifts. The Corps would have had difficulty monitoring this pre-shift activity. Moreover, although plaintiffs reported early on a regular basis, they did not regularly engage in compensable activities. The district court found that "most employees came in about 15 minutes early, and sometimes spent a portion of this time reading the log book or exchanging information." Although plaintiffs' aggregate claim may be substantial, we conclude that their claim is *de minimis* because of the administrative difficulty of recording the time and the irregularity of the additional pre-shift work.

## II.  EARLY RELIEF DURING LOCKAGES

▮ A lockage occurred when a vessel came through the navigation locks at the dams. An operator was sent from the control room to the locks to perform the lockage. Occasionally, a lockage would occur at the time of a shift change and early arriving employees would be sent to the locks to relieve the operator. This practice enabled the departing employee to avoid having to work past the scheduled shift.

The district court found that an employee was asked to relieve the previous operator only once or twice a month, and that it took 5 to 15 minutes to relieve an operator. It properly concluded that this claim was *de minimis*. The aggregate amount of time involved was insignificant and the practice was irregular. A great deal of uncertainty surrounded the testimony as to how often lockages occurred at a shift change. Moreover, because of the ad hoc nature of this duty, it would have been difficult as an administrative matter for the Corps to record this overtime.

## III.  OPENING AND CLOSING OF GATES

▮ The employees working the swing and graveyard shifts alleged that they were required to report early to allow them time to open and close the security gates to the project areas. The district court found that this activity took no more than 3 minutes.

The district court properly held that the Portal-to-Portal Act specifically exempted from the FLSA overtime requirements the time plaintiffs took to open and close the project gates. The Act does not require employers to pay overtime for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform ...." 29 U.S.C. § 254(a)(1). The opening and closing of gates enables the employees to reach their actual place of performance and is the kind of activity covered by this exception. *See Carter v. Panama Canal Co.*, 314 F.Supp. at 390–91.

AFFIRMED.

CANBY, Circuit Judge, concurring:

I concur in the judgment on the ground that the trier of fact could reasonably have found the amounts of time spent by the employees in pre-shift reading and discussing of the logs and in lockage duties was *de minimis*. I therefore join Parts IB and II of Judge Choy's opinion. I would not reach the issue of opening and closing of gates discussed in Part III of Judge Choy's opinion, because appellant has not pursued the issue on this appeal.

While I agree as well with much of the discussion in Part I of Judge Choy's opinion, I cannot agree that the Westrick letter conclusively establishes that the Corps did not "suffer" or "permit" the work to be done outside of the normal shift. Mere issuance of written instructions against overtime is not sufficient to relieve the employer of liability if he nevertheless knows that overtime is being worked and allows it. *Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir.1966). That rule is not made dependent upon the work's being incapable of performance during regular shift hours. *See id.* Nor is it determinative that the

Corps did not pressure employees to engage in pre-shift work; the point is that the Corps, if it knows pre-shift work is being done, must apply pressure to end it if it does not want the work to be compensable. There is ample evidence here that the Corps knew of the work and "suffered" or "permitted" it to be done before the start of the shift.