**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ISAAC RODRIGUEZ, as an individual and on behalf of all others similarly situated, <br><br> *Plaintiff - Appellant*, <br><br> v. <br><br> NIKE RETAIL SERVICES, INC., <br> *Defendant - Appellee.* | No. 17-16866 <br><br> D.C. No. 5:14-cv-01508-BLF <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted June 14, 2019
San Francisco, California

Filed June 28, 2019

Before: MARY M. SCHROEDER and MILAN D. SMITH, JR., Circuit Judges, and JED S. RAKOFF,[*] District Judge.

Opinion by Judge Jed S. Rakoff

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Federal *De Minimis* Doctrine

The panel reversed the district court's summary judgment in favor of Nike Retail Services, Inc., and held that after *Troester v. Starbucks Corp.*, 421 P.3d 1114 (Cal. 2018), the federal *de minimis* doctrine – which precludes recovery for otherwise compensable amounts of time that are small, irregular, or administratively difficult to record – does not apply to wage and hour claims brought under the California Labor Code.

The panel held that the district court's grant of summary judgment cannot be affirmed on the record below. The panel remanded for further proceedings consistent with *Troester*.

### COUNSEL

Max W. Gavron (argued), Nicholas Rosenthal, and Larry W. Lee, Diversity Law Group APC, Los Angeles, California; William L. Marder, Polaris Law Group LLP, Hollister, California; Dennis S. Hyun, Hyun Legal APC, Los Angeles, California; for Plaintiff-Appellant.

Jon D. Meer (argued) and Michael Afar, Seyfarth Shaw LLP, Los Angeles, California, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# OPINION

RAKOFF, District Judge:

Defendant Nike Retail Services, Inc. ("Nike") requires its retail employees to undergo "off the clock" exit inspections every time they leave the store. Seeking compensation for the time spent on these exit inspections, plaintiff Isaac Rodriguez brought a class action on behalf of himself and similarly situated Nike employees. The District Court granted summary judgment for Nike, holding the Rodriguez's claims were barred by the federal *de minimis* doctrine, which precludes recovery for otherwise compensable amounts of time that are small, irregular, or administratively difficult to record. The California Supreme Court subsequently held in *Troester v. Starbucks Corp.*, 421 P.3d 1114 (Cal. 2018), that the federal *de minimis* doctrine does not apply to wage and hour claims brought under California law. Accordingly, we reverse and remand to the District Court for further proceedings consistent with *Troester*.

## FACTUAL AND PROCEDURAL HISTORY

A.  The District Court's Order Granting Summary Judgment for Nike

Nike has 34 retail stores in California. At these stores, employees (other than those exempt from applicable wage and hour laws) are required to track their hours by "punching" in and out on a time clock. Separately, these employees are required to submit to exit inspections each time they leave the store on a break or at the end of the day. These inspections can be longer or shorter depending, for example, on whether an employee needs to wait at the exit for someone to check them, whether the employee is

carrying a box or bag that must be inspected, or the like. Regardless of how long the inspections take, however, they occur after the employee has punched out, such that exit inspections are "off the clock" and are thus uncompensated.

Plaintiff Isaac Rodriguez worked at Nike's Gilroy, California retail store from November 2011 to January 2012. On February 25, 2014, Rodriguez filed a class-action complaint in Santa Clara County Superior Court, and on April 1, 2014, Nike removed the case to the District Court. On December 8, 2014, Rodriguez filed his First Amended Class Action Complaint, which brings claims under: (1) California Labor Code §§ 1194 and 1197 (failure to pay minimum wages); (2) California Labor Code §§ 510 and 1194 (failure to pay overtime wages); and (3) California Business and Professions Code § 17200 et seq. (unfair business practices). On August 19, 2016, the District Court certified a class of "[a]ll current and former non-exempt retail store employees of [Nike] who worked in California during the period from February 25, 2010 to the present."

On January 31, 2017, Nike moved for summary judgment against the certified class. Nike argued that Rodriguez's claims were barred by the federal *de minimis* doctrine, which precludes recovery for otherwise compensable amounts of time that are small, irregular, or administratively difficult to record. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); *Lindow v. United States*, 738 F.2d 1057, 1062–63 (9th Cir. 1984). In support of its motion, Nike put forth expert testimony from Robert Crandall, who, in response to this lawsuit, conducted a "time and motion study" to measure the length of exit inspections at Nike's California stores. Crandall randomly selected 15 of Nike's California retail locations and conducted video and in-person observations over a 30-day

period. Based on his study, Crandall concluded that the average exit inspection took between 16.9 and 20.2 seconds, and that the median inspection took 4.7 seconds. Crandall also concluded that 21.5% of inspections took no measurable time, 92.2% took less than a minute, and 97.5% took less than two minutes.

In his opposition to Nike's motion, Rodriguez put forth testimony from his own expert, Brian Kriegler, who analyzed Crandall's study. Based on Kriegler's testimony, Rodriguez argued that Crandall's study was flawed in several respects, including that it: (1) covered too brief a sample to be extrapolated to the class period; (2) relied on "judgment calls" about what was happening in video observations; (3) artificially decreased inspection times by assuming that subjects who were interacting with others were not also waiting to be inspected; and (4) contained disparities between video and in-person observations. Rodriguez also put forth deposition testimony from Nike store managers who said that exit inspections regularly took several minutes.

Furthermore, Rodriguez noted that the question of whether the federal *de minimis* doctrine applied to California Labor Code claims was then pending before the California Supreme Court. *See Troester v. Starbucks Corp.*, 680 F. App'x 511, 512 (9th Cir. 2016) (certifying the question). Even if the doctrine applied, Rodriguez argued, Nike failed to carry its burden because it did not show that the amounts of time at issue were small, irregular, or administratively difficult to record.

On September 12, 2017, the District Court granted Nike's motion and dismissed the case. *See Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF, 2017 WL 4005591, at *1 (N.D. Cal. Sept. 12, 2017). The court began

by addressing whether the *de minimis* doctrine applied to Rodriguez's claims and by explaining that "Nike's motion for summary judgment hinges on this question." *Id.* at *6. Although the court acknowledged that the question was pending before the California Supreme Court in *Troester*, it stated that it "must operate in the present legal landscape and apply the law as it currently exists." *Id.* at *7. Under current precedent, the court held, "the *de minimis* doctrine is a valid defense to wage claims brought under the California Labor Code." *Id.* The court then applied the factors set forth in *Lindow v. United States*, which courts in our circuit consider when evaluating whether amounts of time are *de minimis*: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." 738 F.2d at 1063.

Before applying the *Lindow* factors, the District Court summarized the evidence before it. The court stated that it would not consider Kriegler's testimony insofar as it attacked the accuracy of Crandall's study because these attacks did "not supply evidence addressing any of the *de minimis* factors." *Rodriguez*, 2017 WL 4005591, at *8. Although such attacks "may be appropriate on a motion to strike expert testimony," the court reasoned, "it is not evidence that creates a factual dispute for purposes of summary judgment." *Id.* Moreover, the court held, to the extent that Rodriguez intended for his motion to be construed as a motion to strike, the motion was denied, as Kriegler's testimony failed to show that Crandall's study was so unreliable as to be inadmissible. *Id.* at *9. The court did, however, consider the depositions of Nike store managers who testified that exit inspections regularly took several minutes. On this basis, the court concluded that, "viewing the evidence in the light most favorable to"

Rodriguez, "it is undisputed that an exit inspection takes between zero seconds and several minutes." *Id.* at \*12.

Even assuming that exit inspections took several minutes, however, the court held that this time was *de minimis* under *Lindow*. The court began by noting that "[a]n important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work," and that "courts have regularly held that daily periods of up to 10 minutes are *de minimis*." *Id.* at \*11 (alteration in original) (quoting *Lindow*, 738 F.2d at 1062). The court then turned to the first *Lindow* factor—the administrative difficulty involved in recording exit-inspection time—and held that Rodriguez had failed to create a triable issue by arguing that Nike should install time clocks at store exits, rather than at the back of the store. *Id.* at \*13–14. Not only did Nike offer business reasons for having clocks at the back of the store, the court explained, but Rodriguez's proposal would also require some employees to spend more time clocking back in and out at store exits than they spent undergoing inspections. *Id.* at \*14. This conclusion was unaltered, the court held, by the fact that other major retailers placed time clocks at the front of their stores to compensate employees for security checks. *Id.* at \*13. The court also acknowledged, but did not address, Rodriguez's further proposals that Nike perform inspections at the back of the store before employees clock out, or that Nike add a fixed amount of time to each employee's paycheck to account for inspection time. *Id.*

Moving to the aggregate amount of compensable time, the court repeated the point that daily periods of 10 minutes or less are generally considered *de minimis*. *Id.* at \*15. Even if each exit inspection took several minutes, the court reasoned, it would take multiple exits to meet the 10-minute

threshold. Moreover, the court explained, "the *Lindow* court made clear that even when an aggregate claim is substantial, a claim may still be considered *de minimis* 'because of the administrative difficulty of recording the time and the irregularity of the additional [] work.'" *Id.* at \*16 (alteration in original) (quoting *Lindow*, 738 F.2d at 1064).

Finally, with respect to regularity, the court held that Crandall's study "demonstrates that compensable exit times lasting at least 60 seconds did not occur regularly." *Id.* The 60-second threshold was important, the court concluded, because Nike's systems measured time to the whole minute, and a 60-second inspection would thus have a measurable effect on wages. Although, as noted, Rodriguez had put forth testimony from Nike store managers that exit inspections could take several minutes, the court held that there was no evidence that such inspections occurred regularly. *Id.* at \*17. Accordingly, the court concluded that each of the *Lindow* factors favored Nike and that no reasonable jury could find that exit inspections were compensable.

## B.  The California Supreme Court's Decision in *Troester*

Rodriguez filed his notice of appeal on September 14, 2017, and on April 20, 2018, we stayed appellate proceedings pending the California Supreme Court's decision in *Troester*. On July 26, 2018, the California Supreme Court issued its decision. *Troester v. Starbucks Corp.*, 421 P.3d 1114 (Cal. 2018), *as modified on denial of reh'g* (Aug. 29, 2018).

*Troester* involved a challenge to Starbucks's practice of requiring employees to perform store-closing tasks after clocking out. *Id.* at 1116–17. The undisputed evidence before the District Court showed that these tasks took 4 to 10 minutes per day. *Troester v. Starbucks Corp.*, No. CV 12-

7677 GAF (PJWx), 2014 WL 1004098, at \*4 (C.D. Cal. Mar. 7, 2014). Because these amounts were less than the 10-minute threshold discussed above, and because it was not administratively feasible for employees to clock out after performing store-closing tasks, the District Court granted summary judgment for Starbucks based on its *de minimis* defense. *Id.* at \*4–5. The court held that summary judgment was appropriate even though employees performed store-closing tasks on a daily basis, such that the third *Lindow* factor, regularity, weighed in the employees' favor. *Id.* at \*5.

On appeal, we certified the following question to the California Supreme Court: "Does the federal Fair Labor Standards Act's *de minimis* doctrine, as stated in *Anderson v. Mt. Clemens Pottery Co.* and *Lindow v. United States*, apply to claims for unpaid wages under the California Labor Code sections 510, 1194, and 1197?" *Troester*, 680 F. App'x at 512 (citations omitted). The panel explained that "[t]he federal *de minimis* rule could be seen as less employee-protective than California's wage and hour laws and, therefore, at odds with those laws." *Id.* at 515. By answering the question, the panel stated, the California Supreme Court could "either dispose of the appeal or determine how the case might proceed were we to remand this putative class action to the district court." *Id.*

The California Supreme Court accepted certification, and it held that the federal *de minimis* doctrine does not apply to California's wage and hour statutes or regulations. *Troester*, 421 P.3d at 1116. The court began by observing that California labor laws are generally more protective than federal labor laws, and it reasoned that "[t]he federal rule permitting employers under some circumstances to require employees to work as much as 10 minutes a day without compensation is less protective than a rule that an employee

must be paid for 'all hours worked' or '[a]ny work' beyond eight hours a day." *Id.* at 1120 (second alteration in original) (citations omitted) (first quoting Cal. Code Regs. tit. 8, § 11050(3)(A)–(B); then quoting Cal. Lab. Code § 510(a)). The court concluded, moreover, that "[n]othing in the language of the wage orders or Labor Code shows an intent to incorporate the federal de minimis rule articulated in *Anderson*, *Lindow*, or the federal regulation" codifying the *de minimis* doctrine. *Id.*

Although the court held that the federal *de minimis* doctrine did not apply to wage and hour claims, it left open "whether a [California] de minimis principle may ever apply." *Id.* at 1121; *see id.* at 1116 ("We do not decide whether there are circumstances where compensable time is so minute or irregular that it is unreasonable to expect the time to be recorded."). At least on the facts of the case before it, the court held, Starbucks's *de minimis* defense failed. *Id.* at 1125. In so holding, the court explained that "[a]n employer that requires its employees to work *minutes* off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine." *Id.* (emphasis added). Nor was a different conclusion compelled by the administrative difficulties involved in recording the additional time. *Id.* To the contrary, the court stated that "employers are in a better position than employees to devise alternatives that would permit the tracking of small amounts of regularly occurring work time." *Id.* For example, the court reasoned, Starbucks might adapt or develop tools to "track[] small amounts of time," or it might "restructure the work so that employees would not have to work before or after clocking out." *Id.* And even if these solutions were not practical, the court concluded, "it may be possible to

reasonably estimate work time . . . and to compensate employees for that time." *Id.*

After the California Supreme Court issued its ruling, we reversed and remanded the District Court's order granting summary judgment for Starbucks. *Troester v. Starbucks Corp.*, 738 F. App'x 562, 563 (9th Cir. 2018). Because the California Supreme Court had held that the *de minimis* doctrine did not apply to the wage and hour claims at issue, we declined to "reach alternate grounds for appeal, which challenged the correctness of the district court's application of the de minimis doctrine to the evidence presented." *Id.* at 563 n.1.

C. The Instant Appeal

As noted above, Rodriguez filed his appeal and opening brief before the California Supreme Court issued its decision in *Troester*. The parties subsequently stipulated that Rodriguez would strike his opening brief and file a revised brief in light of *Troester*. In his revised brief, Rodriguez argues that the District Court erred in granting summary judgment for Nike based on the federal *de minimis* doctrine. Nike argues that reversal is unwarranted because the amounts of time at issue here are *de minimis* even under *Troester*.

JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review a grant of summary judgment de novo." *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 746 (9th Cir. 2003) (en banc). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and

whether the district court correctly applied the relevant substantive law." *Id.*

## DISCUSSION

The issue on appeal is straightforward: did the District Court err in granting summary judgment for Nike based on the federal *de minimis* doctrine? The answer, after *Troester*, is equally clear: the federal *de minimis* doctrine does not apply to wage and hour claims brought under the California Labor Code. By applying the doctrine to Rodriguez's claims, the District Court failed—understandably, given the legal landscape at the time—to "appl[y] the relevant substantive law."

That the District Court relied on the federal *de minimis* doctrine is beyond question. Indeed, the court began its discussion of Nike's motion by addressing "whether the [federal] *de minimis* doctrine applies to claims for violations of the California Labor Code." *Rodriguez*, 2017 WL 4005591, at *6. The court acknowledged that "[t]he outcome of Nike's motion for summary judgment hinges on this question," and that "the California Supreme Court has not addressed" the matter. *Id.* The court even referenced the pending decision in *Troester*, noting that "this Court does not have the benefit of a ruling from California's high court that either alters or solidifies the viability of the *de minimis* doctrine outside of the FLSA context from which it originated." *Id.* at *7. "Under current law," the court concluded, "the *de minimis* doctrine is a valid defense to wage claims brought under the California Labor Code." *Id.*

The court's analysis, moreover, rested on several premises that *Troester* explicitly rejected. Both as a preliminary matter and in its discussion of *Lindow*'s "aggregate amount of compensable time" factor, *id.* at *11,

the court repeatedly invoked the federal doctrine's 10-minute daily threshold for determining whether amounts of uncompensated time are *de minimis*. *See, e.g.*, *id.* at \*12 ("Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." (quoting *Lindow*, 738 F.2d at 1062)); *id.* at \*15 ("Drawing all reasonable inferences in favor of Rodriguez, the daily amount of time is still well within the 10-minute *de minimis* threshold."). *Troester* made clear, however, that the 10-minute threshold is inconsistent with California labor laws, under which "an employee must be paid for 'all hours worked' or '[a]ny work' beyond eight hours a day." 421 P.3d at 1120 (alteration in original) (citations omitted) (first quoting Cal. Code Regs. tit. 8, § 11050(3)(A)–(B); then quoting Cal. Lab. Code § 510(a)). After *Troester*, "[a]n employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine." *Id.* at 1125.

Likewise, in its discussion of "the practical administrative difficulty" of recording exit-inspection time, the District Court assumed that Nike was required to prove "only that it would be administratively difficult to [record inspection time] given its timekeeping system." *Rodriguez*, 2017 WL 4005591, at \*13–14. But *Troester* expressly "decline[d] to adopt a rule that would require the employee to bear the entire burden of any difficulty in recording regularly occurring work time." 421 P.3d at 1125. To the contrary, *Troester* held that "employers are in a better position than employees to devise alternatives that would permit the tracking of small amounts of regularly occurring work time." *Id.* And *Troester* explained that "even when neither a restructuring of work nor a technological fix is

practical, it may be possible to reasonably estimate work time . . . and to compensate employees for that time." *Id.* Rodriguez proposed such an alternative, pursuant to which fixed amounts of time would be added to employees' paychecks. He also proposed an alternative whereby employees would undergo inspections at the back of the store before clocking out. *Cf. id.* ("One such alternative, which it appears Starbucks eventually resorted to here, was to restructure the work so that employees would not have to work before or after clocking out."). Although the court acknowledged that Rodriguez had made these proposals, it did not explain why they failed to create a triable issue. *Rodriguez*, 2017 WL 4005591, at \*13.

On appeal, Nike essentially concedes that the District Court applied the wrong legal standard when it relied on the federal *de minimis* doctrine. Nike nevertheless argues that we should affirm the grant of summary judgment on the alternative ground that the exit inspections at issue are *de minimis* even under *Troester*. As Nike notes, *Troester* left open "whether there are circumstances where compensable time is so minute or irregular that it is unreasonable to expect the time to be recorded," and "decline[d] to decide whether a de minimis principle may ever apply to wage and hour claims" under California law. 421 P.3d at 1116, 1121. Citing *Troester*'s admonition that employers must compensate employees who "work minutes off the clock on a regular basis or as a regular feature of the job," *id.* at 1125, Nike argues that *Troester* "rejected the *de minimis* defense as applied to a matter of **minutes** worked 'off the clock,' not a matter of seconds." Because "only 3.3% of the exits [measured by Crandall] lasted more than 60 seconds," Nike contends, "the occurrences where exits were more than mere seconds were irregular."

To the extent Nike urges us to interpret *Troester* as replacing the federal *de minimis* doctrine's 10-minute daily threshold with a state-law 60-second analogue, we hereby decline to do so. Not only would this interpretation read far too much into *Troester*'s passing mention of "minutes," but it would also clash with *Troester*'s reasoning, which emphasized the requirement under California labor laws that "employee[s] must be paid for all hours worked or any work beyond eight hours a day." 421 P.3d at 1120 (quotations and alteration omitted). We doubt that *Troester* would have been decided differently if the closing tasks at issue had taken only 59 seconds per day.**[1]**

Instead, we understand the rule in *Troester* as mandating compensation where employees are regularly required to work off the clock for more than "minute" or "brief" periods of time. *Id.* at 1116, 1125. This rule does not require employers to "account for '[s]plit-second absurdities,'" *id.* at 1123 (alteration in original) (quoting *Anderson*, 328 U.S. at 692), and it might not apply in cases where work is so "irregular that it is unreasonable to expect the time to be recorded," *id.* at 1116. But where employees are required to

---

**[1]** It is irrelevant, moreover, that Nike's timekeeping system records time in whole-minute increments. The record indicates that Nike's system truncates clock-in and clock-out times, such that an employee who clocks in/out at 10:00 AM and 55 seconds is credited as clocking in/out at 10:00 AM. Under this system (or a system that rounds rather than truncates), an employee does not need to undergo an exit inspection lasting longer than one minute to lose one minute of compensable time. Instead, an employee who clocks out at 10:00 AM and 55 seconds will lose one minute of compensable time if they undergo even a 5-second inspection after clocking out, because they would have been credited as clocking out at 10:01 AM, rather than at 10:00 AM, if they had been inspected before clocking out. Whether an employee loses one minute of compensable time is therefore only a matter of probability, with the probability approaching 1 as the inspection time approaches one minute.

work for more than trifling amounts of time "on a regular basis or as a regular feature of the job," *id.* at 1125, *Troester* precludes an employer from raising a *de minimis* defense under California law.

Applying this rule to the instant case, we hold that the District Court's grant of summary judgment cannot be affirmed on the record below. As the District Court noted, the undisputed facts show only "that an exit inspection takes between zero seconds and several minutes." *Rodriguez*, 2017 WL 4005591, at *12. And the evidence before the court indicated that employees frequently exited multiple times per day, although it did "not indicate how many times an employee leaves the store each day, or if an employee ever leaves more than twice in a single day." *Id.* at *15. Moreover, while Crandall found that 69.0% of exit inspections took less than 15 seconds, and that 81.4% of inspections took less than 30 seconds, multiple Nike store managers testified, to the contrary, that longer inspections were common. *See, e.g.*, *id.* at *4 ("90% of the time an employee was required to wait for some period of time for a manager to be available to perform the exit inspection," and "60–65% of the time that period of waiting time was at least a minute." (quotations omitted)); *id.* ("40–50% of the time . . . , the employee had to wait at least one full minute before the check was performed."); *id.* at *12 ("[A]bout 45 percent of the time an employee would be required to wait a minute or two for a manager to become available and perform a security check." (quotations omitted)).

Given this evidence, we cannot conclude that exit inspections qualify as "split-second absurdities." Nor do they appear so "irregular that it is unreasonable to expect the time to be recorded." Even according to Crandall's study, the vast majority of inspections took measurable amounts of

time, and there is a genuine dispute between the parties as to whether these amounts were more than "minute," "brief," or "trifling." As such, the record below does not support affirmance of the District Court's grant of summary judgment, and we reverse and remand for further proceedings consistent with *Troester*.

Each party shall bear its own costs on appeal.

**REVERSED AND REMANDED.**